## Asa Fessenden's Estate.   B. A. Tyler's Appeal.

*Will—Charge upon land—Limitation acts of April 27, 1855, and February 22, 1869.*

Where land is devised subject to a charge created upon it by the will, and the devisee subsequently sells the land, but continues to pay the charge in exoneration of his vendee, the limitation under the acts of April 27, 1855, P. L. 369, and February 22, 1869, P. L. 3, providing that annuities and charges upon land shall be extinguished if no demand is made within 21 years, will begin to run only from the time the devisee ceases to pay; and in such case the charge upon the land will not be extinguished under said acts, although no demand shall have been made upon the grantee of the land within 21 years.

*Charge upon land—Devise—Sale of lands—Inverse order of alienation.*

Where a devisee accepts two tracts of land charged with the maintenance of another person, and sells them at different times, and to different persons, the charge must be levied upon the tracts in the inverse order of their alienation.

*Auditor's finding of facts—Review—Practice, S. C.*

The finding of an auditor approved by the court below will be sustained on appeal, if there is any evidence which warranted it, but his finding of a material fact without evidence, or palpably against it, constitutes grounds for reversal.

Argued March 20, 1895.    Appeal, No. 34, Jan. T., 1895, by
B. A. Tyler, from decree of O. C. Susquehanna Co., Jan. T.,
1890, No. 71, dismissing exceptions to auditor's report.    Before
STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and FELL, JJ.
Reversed.

Exceptions to auditor's report.

From the auditor's report it appeared that Asa Fessenden
died in 1864, leaving a will by which he provided, inter alia, as
follow :

" I give and bequeath unto my son Frederick A. Fessenden
and his heirs and assigns forever, all my real estate situate in
the township of Bridgewater aforesaid, one piece or parcel
thereof on which my dwelling now stands, containing about
eighteen acres, one other piece thereof adjoining lands of Geo.
Fessenden and Ezra Beebe on the north, on the west by the
highway, on the south by William Kelly, and on the east by
Moses S. Tyler, containing about fifty-seven acres more or less,
subject however to the support and maintenance of my son
Samuel N. Fessenden, and my daughter Lora E. Fessenden
during their natural lives, and the said Frederick A. Fessenden
is not to dispose of the said lands during the natural lives of
the said Samuel N. and Lora E. except that he shall make pro-
visions for the faithful support and maintenance of the said
Samuel N. and Lora E. as shall be approved by the orphans'
court of Susquehanna county."

Frederick A. Fessenden accepted the devise, and on March 7,
1868, sold and conveyed the 57 acre tract of land to Moses S.
Tyler, who at his death in 1884 devised the same to B. A.
Tyler.

The auditor further found as follows :

" 12. On the 25th day of March, 1867, while he was yet in
possession of the said 18 acre piece of land under the devise as
aforesaid, a judgment was duly entered against him, the said
Frederick A. Fessenden, in the court of common pleas of Sus-
quehanna county, and upon the 22d day of April, 1874, the
said 18 acre piece of land was sold by M. B. Helme, sheriff of
the said county, by force and virtue of a writ of fi. fa., issued
out of the said court upon the said judgment, at which sale
the said respondent, D. D. Searle, became the purchaser of the
said 18 acre piece of land.

" 13. Under some contract or arrangement between the said D. D. Searle and the said Frederick A. Fessenden, said Fessenden remained in possession of this land till April 1, 1890, at which time Fessenden surrendered possession to Searle, and one Jefferson Green, also one of the respondents in this case, took actual possession of the said land.

" 14. The said respondent, D. D. Searle, and the said respondent, Jefferson Green, now own and have possession of the said 18 acre piece of land, and have had the rents and profits of the same since April 1, 1890.

" 15. The market value of the said 18 acre piece of land is about $600, and its rental value is from $40.00 to $50.00 per year.

" 16. Neither of the said respondents, B. A. Tyler, D. D. Searle or Jefferson Green, since receiving the profits of the respective pieces of land as aforesaid, has in any way contributed to the support and maintenance of the said Samuel N. Fessenden, and do now refuse so to do.

" 17. The said F. A. Fessenden accepted the said devise as in the seventh finding stated, cared for, supported and maintained the said Samuel N. Fessenden, at his own expense, as a member of his family, uncomplainingly from the death of the said Asa Fessenden in 1864, till October 28, 1889, when he presented his petition for a commission in lunacy, as appears in No. 322, November term, 1889, in common pleas of Susquehanna county, to inquire into the sanity of the said Samuel N. Fessenden.

" 18. October 28, 1889.   Inquest awarded and E. W. Safford, Esq., appointed commissioner, etc.

" November 11, 1889.   Return to the inquest finding the said Samuel N. Fessenden a lunatic, filed and confirmed nisi.

" November 23, 1889.   Z. D. Jenkins appointed committee of said lunatic.

" January 13, 1890.   Return to inquisition confirmed finally.

" January 21, 1890.   Z. D. Jenkins, as committee of Samuel N. Fessenden, lunatic, petition for citation commanding the said respondents, B. A. Tyler, D. D. Searle, Jefferson Green and Zenas Smith and C. E. Tyler, executors, etc., of Moses S. Tyler, dec'd, to make answer to the complaint in the said petition made, to which answers were severally by the said respond-

ents respectively filed. F. A. Fessenden was also cited and filed his answer in this case.

" 19. .December 29, 1891. Eliza Fessenden, wife of the said Frederick A. Fessenden, presented her petition to court declaring her intention of claiming the benefit of her separate earnings, as appears in No. 222 January term, 1892.

" 20. March 22, 1892, the said Z. D. Jenkins, as committee aforesaid, made an arrangement with the said Eliza Fessenden by which she, the said Eliza Fessenden, agreed to board, care for, support and maintain the said Samuel N. Fessenden, and that he as such committee should pay the sum of $3.00 per week for so doing, so long as the said Samuel N. Fessenden remained. in present health and condition.

" 21. Up to the time, and for several years prior thereto (Dec. 29, 1891), when the said Eliza Fessenden filed her petition in No. 222, January term, 1892, the said F. A. Fessenden, assisted by his said wife, Eliza, kept a boarding house in the borough of Montrose, Pa., the profits of which were the principal source of support of the said Fessenden family.

" 22. The boarding house was kept in a tenement, rented in the name of the said F. A. Fessenden; a sign was put out in the front of the house in his name.

" At no time has there any outward or visible change been made, or taken place in the running or management of this house; the old sign is still up; the said F. A. Fessenden renewed the lease of the house April 1, 1892, for another year in his own name, the cow pasture and the garden to be used in connection with the boarding house; he also continues to do the purchasing of groceries, etc., for the boarding house.

" 23. The said Samuel N. Fessenden still continues to live in the said Fessenden family the same as he did prior to the said agreement made between Eliza Fessenden and Z. D. Jenkins, March 22, 1892.

" 24. The said F. A. Fessenden is now nearly 60 years of age, in feeble health, able to do little or no manual labor; he is possessed of no property of any kind, and dependent mainly upon the said boarding house for support of himself and family, and this was his condition and circumstances October 28, 1889, when he presented the petition for the said commission in lunacy.

" 25. The work in connection with the management of the

said boarding house is performed by the said Eliza Fessenden mainly; it is kept running by her efforts and her labor.

"26. The said Samuel N. Fessenden is a person above the age of 70 years, quiet and orderly, but unable to speak or hear a word, not possessed of sufficient ability, if thrown among strangers, to make his wants known, without any knowledge of the different denominations of money or of their value. In his present condition he is unable to properly care for his person or estate.

"At the time these proceedings were instituted, January 21, 1890, by Z. D. Jenkins, committee, the said Eliza Fessenden was running and conducting the said Fessenden boarding house, and under an agreement and arrangement with the said F. A. Fessenden that she, the said Eliza, should have the profits and avails thereof, and at which time she was supporting and maintaining the said S. N. Fessenden, and has so supported and cared for him ever since to the present time."

August 1, 1894, on exceptions to the auditor's report, SIT-SER, P. J., specially presiding, filed the following opinion:

"On January 21, 1890, Z. D. Jenkins, committee of Samuel N. Fessenden, a lunatic, presented his petition to the orphans' court of Susquehanna county, to enforce a legacy charged upon land in favor of the lunatic. The will of Asa Fessenden, probated the 22d day of August, 1865, provided among other things as follows: 'I give and bequeath unto my son Frederick A. Fessenden, and his heirs and assigns forever, all my real estate situate in the township of Bridgewater, aforesaid, one piece or parcel thereof on which my dwelling now stands, containing about eighteen acres, one other piece thereof adjoining lands of Geo. Fessenden and Ezra Beebe on the north, on the west by the highway, on the south by William Kelly, and on the east by Moses S. Tyler, containing about fifty-seven acres, more or less, subject however, to the support and maintenance of my son Samuel N. Fessenden and my daughter, Lora E. Fessenden, during their natural lives and the said Frederick A. Fessenden is not to dispose of the said lands during the natural lives of the said Samuel N. and Lora E., except that he shall make provisions for the faithful support and maintenance of the said Samuel N. and Lora E.,

as shall be approved by the orphans' court of Susquehanna county.'

" Frederick A. Fessenden accepted the land in pursuance of this devise and entered into possession of it. In 1867 a judgment was entered against him by D. D. Searle, and by process issued upon this judgment the 18 acre piece was sold by the sheriff to D. D. Searle, and deed made to him on the 22d of April, 1874. On the 7th of March, 1868, F. A. Fessenden sold the 57 acre piece to Moses Tyler, who by his will devised it to B. A. Tyler in 1894, who has since been in possession of it. Due notice has been given to the parties in interest. The petitioner seeks to enforce the legacy given for the support of Samuel N. Fessenden out of the land mentioned in the above recited devise. The matter was referred to an auditor and is now before us on exceptions to his report.

" One objection to looking to the land for Samuel's support is founded upon the 7th section of the act of April 27, 1855, P. L. 369, Pur. 1064, pl. 11, which provides as follows :

" ' In all cases where no payment, claim or demand shall have been made on account of, or for any ground-rent, annuity or other charge upon real estate, for twenty-one years, or no declaration or acknowledgment of the existence thereof shall have been made within that period, by the owner of the premises, subject to such ground-rent, annuity or charge, a release or extinguishment thereof shall be presumed, and such ground-rent, annuity or charge shall thereafter be irrecoverable.' It is contended by counsel for B. A. Tyler that, as the 57 acre piece was deeded to him or his grantor on the 7th of March, 1868, and that this petition was presented to the court on the 20th of January, 1890, a period of about 22 years, during which no payment, claim or demand had been made upon him or his immediate grantor, on account of this charge upon the land, and no declaration or acknowledgment of the existence thereof had been made within that period by him, or his immediate grantor, the charge upon the 57 acre piece was extinguished. Now the act above referred to is constitutional: Biddle v. Hooven, 120 Pa. 221, and it applies to a legacy on land. Pratt v. Eby, 67 Pa. 396 ; Wingett's Appeal, 122 Pa. 486. There is no exception in the act in favor of lunatics : Metz v. Hipps, 96 Pa. 15.

" In deciding whether this act bars the claim against the 57 acre piece we must bear in mind the situation of the parties. F. A. Fessenden, by accepting the legacy of the two pieces of land, assumed and substantially agreed to perform the conditions annexed to the gift. He became personally and primarily liable for the support of Samuel, and the support of Samuel is charged upon these two pieces of land by the will. And Samuel may resort to the land when Frederick Fessenden fails to discharge the personal liability resting upon him. It is an undisputed fact in the case that Frederick has supported Samuel from the death of Asa Fessenden, the testator, in 1864, until October 28, 1889. Up to this time there was no occasion for Samuel to resort to the land and no power in him to do so, for Frederick was performing the conditions of the devise, and to that extent exonerating the land. Under such circumstances can it be said that no payment has been made on account of this charge upon real estate for 21 years, or that no acknowledgment of the existence of it has been made within that period by the owner of the premises ? True it may be said that Tyler was the owner under an absolute conveyance from March 7, 1868, to the filing of this petition on January 21, 1890, and that during that time no claim had been made upon Tyler, neither did Tyler make any acknowledgment of its existence.

" The word ' owner ' in this act of assembly we think means in this case the devisee and his grantees. The act was never intended to bar a claim or a charge while it was being performed by the person primarily liable. If it could be made to apply under such circumstances, then one who has accepted a legacy conditioned for the support of another can sell the land upon which the legacy may be charged, faithfully perform his liability for 21 years and free the land from the charge. That the statute does not run while the condition is being performed is held in Brown's Petition, 9 Phila. R. 548. Of course there is no pretense for invoking this act to relieve the 18 acre piece, for Frederick Fessenden was in possession of it down to the time of the sheriff sale on the 22d of April, 1874, and, according to the report of the auditor, down to 1890. Under this act it may well be contended that the charge upon the land for Lora E. Fessenden is barred, if nothing has been done for her for the period of 21 years, but Samuel's claim we think is not barred, and he may resort to the land.

" The next question raised here is to the order in which these pieces of land must contribute to his support.   It is claimed that the land first sold by Frederick Fessenden must be looked to last, and that the lands sold last by him should be resorted to first.   If Frederick Fessenden sold the 18 acre piece first, and kept the 57 acre piece, as between him and the grantee of the 18 acre piece, we should certainly require the 57 acre piece to be exhausted first.   And Frederick Fessenden could not sell the 57 acre piece so as to put the purchaser in any better position than he was himself, (for the purchaser would sit in the seat of the grantor): Cowden's Estate, 1 Pa. 267; Nailer v. Stanley, 10 S. & R. 453.   Under the authority of Cowden's Estate, the title of Searle to the 18 acres piece relates back to the entry of his judgment in 1867, about a year prior to the purchase by Tyler.   The legacy for the support of Samuel is a charge upon both pieces of land, but we will exhaust the 57 acre piece before we go upon the 18 acre piece.   Searle's judgment was a lien upon both pieces.   When he attempted to make the money on his judgment by the sale of the real estate in 1874, he found that the 57 acre piece had been conveyed to Tyler, and under the rule that the real estate must be sold in the inverse order of its alienation, was compelled to sell the 18 acre piece first.   And this sale satisfying the judgment, left Tyler in the undisturbed possession of his purchase.   We are now applying the same rule with regard to the order of the sale of pieces of land aliened at different times, which was probably applied to Searle in 1874.   It may seem a hardship to require the 57 acre piece to contribute to the support of Samuel N. Fessenden, but when Tyler purchased in 1868 he must have inquired how it was that Frederick, one of three children, could convey the whole title.   He was bound to inquire into Frederick's title, and finding it was by will of his father, to look at the conditions of it.   He knew, or must be supposed to have known, that this charge rested upon the land.   The owner of that piece is in no position to complain.

" The auditor has found that $3.00 per week from the 22d day of March, 1892, is a reasonable sum to pay for his support. The costs in the proceeding we divide equally between the owners of the two pieces of land.   If the costs and weekly charges are paid it will not be necessary to order a sale, if how-

ever they are not paid, a sale may be ordered on application to court, and counsel may prepare a decree in accordance with this opinion. Numerous other questions have been raised in this case, but we deem it unnecessary to discuss them."

August 28, 1894, the court, upon motion of T. J. Davies, ordered, adjudged and decreed as follows:

"That there is now due the estate of Samuel N. Fessenden by virtue of the bequest to him made, as set forth in the last will and testament of Asa Fessenden, dec'd, three hundred seventy-eight and 43-100 dollars ($378.43), that is to say the sum of $3.00 per week from March 22, 1892, up to the present date, and he is entitled to receive from this date the further sum of $3.00 per week for his support and maintenance until otherwise ordered, and that said sums are a charge upon the lands described in these proceedings. And it is further ordered, adjudged and decreed that D. D. Searle pay one half the costs in these proceedings, and B. A. Tyler the other one half of said costs. That said costs be paid within thirty days from this date, and that in default thereof the respective pieces of real estate described in the petition aforesaid be sold for the payment of said costs at public sale on a writ of levari facias.

"And it is further adjudged and decreed that the 57 acre piece shall first be exhausted in payment of the aforesaid sum due the estate of Samuel N. Fessenden, and in default of payment of the aforesaid sum by B. A. Tyler, the owner thereof, with one half the costs of these proceedings within 30 days, then the said 57 acre piece before described be sold for the payment of the same at public sale on a writ of levari facias.

"And it is further adjudged and decreed that if the proceeds of the sale of the 57 acre piece aforesaid be insufficient to pay the amount due the said estate of Samuel N. Fessenden, with costs as aforesaid, and the sum of $3.00 per week for his future support and maintenance, then it is further adjudged and decreed that D. D. Searle, the owner of the 18 acre piece, pay to the estate of Samuel N. Fessenden the amount remaining unpaid thereon, with $3.00 per week for the future support of said Samuel N. Fessenden until otherwise ordered, and in default thereof for 30 days, that then the land described as the 18 acre piece be sold at public sale on a writ of levari facias.

"It is further adjudged, ordered and decreed that the sum

of $3.00 per week for the support and maintenance of said Samuel N. Fessenden shall be paid in manner as before stated, to wit: In quarterly payments of fifty-two dollars ($52.00) on the 28th days of November, February and May, each and every year until othewise ordered."

*Errors assigned*, among others, were, (1) in confirming auditor's finding that the 18 acre lot was sold on a judgment entered on March 25, 1867; (2) in overruling exception 22 to auditor's report, which was as follows: The auditor erred in not finding that the alleged arrangement was made by the committee and Eliza Fessenden at the time when F. A. Fessenden, who was primarily liable for the support of S. N. Fessenden, had made no default or refusal in the said support, and that therefore the said arrangement was an interference with the legal obligation and duty of said F. A. Fessenden, and void as to B. A. Tyler's rights; (3) in confirming auditor's finding " D "; (11) in entering a decree against the 57 acre tract of land owned by B. A. Tyler.

*Wm. D. B. Ainey, Searle McCollum* with him, for appellant. —The evidence in no way shows the date of the entry of the judgments against Fessenden upon which the 18 acre piece was sold.

The order of events upon which the court must have predicated its decree is reversed, and applying the principle of inverse order of alienation, the Searle piece being the last one aliened must be first exhausted: Cowden's Est., 1 Pa. 267; Carpenter v. Koons, 20 Pa. 222; Milligan's App., 104 Pa. 503.

The petitioner had no interest as against respondents at the time the proceedings were instituted, and an after-acquired interest as of March, 1892, would not relate back to place him in any better position than he was at the institution of these proceedings: 3 Rhone's Orphans' Court, 267.

The decree of the court ignores the fact of the primary and personal liability of Frederick A. Fessenden to support Newell. This defeats the respondents of any right of subrogation against him: Steele's App., 47 Pa. 437; Hoover v. Hoover, 5 Pa. 351; Snyder's App., 75 Pa. 194; Mohler's App., 8 Pa. 26; Lobach's App., 6 Watts, 167; Swoope's App., 27 Pa. 58; 3 Jarman on Wills, 494.

The act of April 27, 1855, is constitutional, and not only bars the recovery of annual installment of ground rent, but utterly defeats the charge : Korn v. Browne, 64 Pa. 55 ; Kerr v. Brobst, 2 Wood, 187 ; Biddle v. Hooven, 120 Pa. 251.

The burden is upon the claimant after 21 years to make the necessary proof required to rebut the presumption : Wingett's App., 122 Pa. 486 ; Wallace v. Church, 152 Pa. 258 ; Meek's App., 161 Pa. 360.

*T. J. Davies*, for appellee.—The findings of fact by an auditor when confirmed by the court will not be reversed except for clear or flagrant error: Menga's App., 19 Pa. 222 ; Bull's App , 24 Pa. 286 ; Drinkhouse's Est., 151 Pa. 294 ; Baird v. Ford, 152 Pa. 637 ; Prouty v. Prouty & Barr Co., 155 Pa. 112 ; Rockey's Est., 155 Pa. 453 ; Donaldson's Est., 158 Pa. 292 ; Coulston's Est., 161 Pa. 151.

The rule that a statute does not begin to run until a right of action accrues is sustained by numerous authorities, among them the following : Hall v. Vandergift, 3 Binn. 374 ; Shepley v. Lytle, 6 Watts, 500 ; Poe v. Foster, 4 W. & S. 351 ; Marple v. Meyers, 12 Pa. 122 ; Dougherty v. Snyder, 15 S. & R. 84.

OPINION BY MR. JUSTICE MCCOLLUM, October 7, 1895 :

We cannot discover a scintilla of evidence in this case to support the finding that the eighteen acre lot was sold on a judgment entered on the 25th of March, 1867. Is is an important finding because upon it is based so much of the decree appealed from as requires that the fifty-seven acre lot purchased by Moses S. Tyler on the 12th of March, 1868, "shall be exhausted in payment of the sum due the estate of Samuel N. Fessenden " before resorting to the eighteen acres for the payment of any portion of the same. The general rule is that the finding of an auditor approved by the court will be sustained on appeal, if there is any evidence which warranted it, but his finding of a material fact without evidence or palpably against it constitutes ground for reversal. In the case before us it seems to be conceded by the learned counsel for the appellee that no evidence was submitted to the auditor on the hearing by either of the litigants showing when the judgment on which the eighteen acre lot was sold on the 22d of April, 1874, was

entered. As the purchaser of this lot acquired his title to it more than seven years after Tyler purchased the fifty-seven acre lot, it was incumbent on the former to prove the existence of facts which gave him as against the latter the position and rights of a first purchaser. These lots prior to the sale of either of them were alike subject to the charge laid upon them by the will of Asa Fessenden, in favor of his son Samuel. Prima facie, Tyler by his purchase acquired the right, in equity, to have the eighteen acre lot sold in satisfaction of this charge before resorting to his lot for payment of it. If his grantor still owned the eighteen acre lot, or had subsequent to his purchase of the fifty-seven acres sold and conveyed it to the present owner of it, there can be no doubt that this equity could be enforced. We think it is equally clear that it could be enforced if the lot was sold on a judgment entered after the Tyler purchase. But the learned court below appeared to think it was sold on a judgment entered before this purchase and that, therefore, the present owner of it must be regarded as the first purchaser of a portion of the property charged with the support of Samuel. Whether the conclusion is warranted by the premises is a question which was not discussed or raised in the paper-books, or on the argument at bar, and we express no opinion in regard to it. To do so intelligently we ought to know when the judgment was entered and when it was revived, because, if it was entered before the Tyler purchase, a timely revival was necessary to continue the lien of it beyond the 12th of March, 1873. It is claimed by the appellant that the lien of the Read, Watrous & Foster judgment was lost before the sale in 1874, and that the Meacham judgment was entered on the 6th of April, 1870, and to show the good faith of his contention in this respect, his counsel exhibited on the argument at bar an exemplification of the record which appeared to sustain it. We may add that the registry of the acknowledgment of the sheriff's deed shows that the lot was sold on the Meacham judgment.

It seems to us that justice to all concerned requires that we sustain the first specification and reverse the finding on which it is based, so that it may be ascertained, on competent evidence, upon what judgment the lot was sold, the time of its entry, and of the revival or revivals of it, if there were any before the sale.

We are not satisfied from our examination of the testimony that the learned auditor erred in the finding complained of in the third specification, or in not finding as it is claimed in the second specification he should have found as to the matters mentioned therein.

We think that as F. A. Fessenden was made a party defendant in this proceeding, and was by reason of his acceptance of the devise personally and primarily liable for the support of Samuel, the decree should have been entered against him for the amount due Samuel's estate, to be levied, on his and his vendees' failure to pay it within a time specified, on the lands secondarily liable for it, in the inverse order of their alienation.

We agree with the learned court below in its conclusion that the charge upon the Tyler lot is not extinguished by the act of April 27, 1855, P. L. 369, or by the supplement thereto of Feb. 2, 1869, P. L. 3.   The reasons given for this conclusion are quite sufficient to sustain it.   There was no default on the part of the person primarily liable for Samuel's support prior to 1890 and Tyler knew there was none.   From 1864 to 1890 Samuel was maintained by his brother Frederick in accordance with the provisions of his father's will and to that extent the burden on the lands on which his support was charged was lightened.   Frederick's support of him during this period was in relief of his vendees, who were advised by the will of his father of the terms on which he might dispose of the lands devised to him, but it cannot be construed as an extinguishment of the charge upon them.

We are not convinced that the proceedings to ascertain the amount due Samuel's estate were premature or tainted with fraud.

To the extent that the rulings complained of conflict with the views herein expressed the specifications are sustained. The remaining specifications are dismissed.

Decree reversed at the costs of the appellee, and it is ordered that the record be remitted to the court below for further proceedings in accordance with this opinion.